Welcome to the U.S. Fifth Circuit Court of Appeal. We have only one case for argument this afternoon. We will now call the case Anthony Cardell Haynes v. Lorie Davis, Director, Texas Department of Criminal Justice Correctional Institutions Division. We will hear first from Mr. Ellis. Richard Ellis, Appellant, Texas Department of Criminal Justice Correctional Institutions Division Thank you. Good afternoon, Your Honors. May it please the Court, I am Richard Ellis for Appellant Anthony Haynes, and the issue here today is whether Rule 60b-6 relief is warranted in light of the Supreme Court's holdings in Martinez v. Ryan and Trevino v. Smith's proceedings to raise an issue of ineffective assistance of counsel may provide cause to excuse a Federal procedural default. And the underlying issue we are here today to decide is whether trial counsel failed to provide effective assistance of counsel at the punishment phase of Mr. Haynes' trial, a claim under Strickland v. Washington and Wiggins v. Smith. The district court's holding and the State's briefing are both based on fundamental and numerous misperceptions and errors, which I'd like to discuss. The district court denied Mr. Haynes' 60b-6 motion in 2015 on three of the same four grounds that it gave in its first opinion, what we've called Haynes' one, in 2007. The district court conceded that a previous ground, this Court's precedent of Ibarra v. Thaler was no longer valid in light of Martinez v. Trevino. First of all, I'd like to discuss the extraordinary circumstances under 60b-6. And the first ground on which the district court denied relief was the lack of Rule 60b-6 extraordinary circumstances. But the problem here is that the district court virtually completely ignored an extensive analysis of why Haynes' case presented better equities and better extraordinary circumstances than the cases cited by that court. Haynes has distinguished in his briefing, has distinguished his case from Diaz and Adams in ten pages of briefing before the district court. Yet this was completely ignored by the district court when it held that, quote, Haynes does not clearly establish what distinguishes his post-judgment case from those in which the Fifth Circuit found no extraordinary circumstance other than to argue the merits of his underlying Strickland claim, end quote. Additionally, the district court twice cited the now overruled 2015 Buck holding of this Court, which is prior to the Supreme Court's holding in Buck v. Davis overturning that. Now, Haynes' extraordinary circumstances are, in addition to the change of the law in Martinez v. Trevino, they are not likely to occur in other cases, and they have not occurred in Martinez v. Trevino. First of all, the first extraordinary circumstance is that this Strickland claim was first raised in 2005, well before the Martinez v. Trevino change in the law occurred, and it included an allegation of ineffective assistance of State habeas counsel. Kennedy. Counsel, we know that basically a change in the law of not constitutional dimension that's retroactive is not an extraordinary circumstance. You are saying it becomes at least a factor in extraordinary circumstance if the issue has been raised before the law was in fact changed or clarified, whatever the situation may be. What's extraordinary about that? It seems to me whether it's been preserved or not preserved is the wrong word in this context, probably, whether it's been presented or not early on, you still have the issue that a change in the law that's not of constitutional dimension doesn't create a right to have a conviction reexamined. Yes, Your Honor. It opens the door. That's what we're saying. Well, I understand that, but why would it? Why wouldn't it? Why would it open a door? Well, because under 60b-6, there needs to be an extraordinary circumstance. And it is one of the extraordinary circumstances. In the other cases that have come before this Court, Adams, Princes, Diaz, it's been either the major or the only extraordinary circumstance. And that's why I'd like to discuss the extraordinary circumstances first. I'm not trying to cut you off, but I'm just trying to understand why, when something is not — is clearly not a basis on which to find extraordinary circumstance, why, if it's been presented for a good while before the law was changed, why that becomes extraordinary? But why don't you keep going with your list, and maybe you can convince me. Well, what we're saying basically, Your Honor, is that it is — it opened the door to the success of — to the 60b-6 petition. We're not saying — we're not arguing — this is clear here, and I think the State has misrepresented this — that we're not arguing that it's the only extraordinary circumstance. We have others. One of them, which is the one that I just said, basically, that it was first raised in 2005, well before the Martinez-Trevino case became final, and this has been a stumbling block in other cases that have been before this Court. Secondly, Mr. Haynes diligently pursued the claim in district court and on appeal to this Court, unlike the situation in the Gonzales Supreme Court case and in the Adams case before this Court. Third, unlike most capital defendants, Haynes had absolutely no prior arrests or convictions and was only 19 at the time of the shooting, which is one year past the cutoff established for capital crimes in the Roper case. How old was he? He was 19 at the time. Had no prior arrests and no — No prior arrests, Your Honor. Not even misdemeanors? No. There has been no — there were no prior arrests at all. And this is an extraordinary circumstance in comparison with the other Martinez-Trevino remands that have come before this Court. Fourth — Isn't that why counsel approached the penalty phase, saying this is a good person, rather than saying — you want him to say he was — he was a drug addict. So that's just a different approach to a set of facts, but the facts that he presented were more consistent with what actually the defendant's actual personality. So I don't know — why is that ineffective? It's ineffective because what we presented in — basically, what the defense tried to present at the punishment phase was very superficial. It didn't — we've shown that there's not — there hasn't been a — there wasn't an adequate investigation. They presented some witnesses, for instance, a staff chaplain who only knew Haynes after his arrest. They presented a minister from the BOOS program who only knew Haynes for a few months. They presented another witness who only knew him for a very short time. They presented some family members very superficially. So we're not — we're not saying that, no, they should have presented him as a drug abuser, which he clearly wasn't. The state presented him as a drug abuser and someone who's going to be very violent. What our witnesses would have presented him as — this is Dr. Rosen, Dr. Cunningham, and Dr. Silverman — our witnesses or any witness similar that would have presented similar testimony to this would have countered that argument that he was simply a drug abuser. They could have shown that the drug abuse came on within a very few weeks after he was — he failed out of the BOOS program in Rhode Island, he was sent back to Houston. Only a few weeks did he get involved with these drugs, and they could have — there was no expert testimony presented that could have put this in some sort of a context in that these conditions are treatable and therefore not all that relevant to future dangerousness. But there was a psychiatrist and a psychologist. There was nothing presented, no expert testimony presented by the defense at the punishment phase, though. It was a very short, last-minute, eleventh-hour, one-page — I think it was by a Dr. Gaffner. But we've shown in our extensive briefing, and that's in 134 pages of the initial federal writ, that this was inadequate and totally — they missed so many things here. The state presented this — Mr. Haynes as basically a drug abuser and relevant to their future dangerousness issue. This could have been — When were the defense counsel appointed to the case? Shortly after the arrest, in 19 — And how long before they began to do any investigation for the penalty phase? Well, Your Honor, we have evidence that the punishment phase investigation was 11th minute, last hour. In fact, some of the reports were submitted to the defense while the jury was still being chosen at Bordier. So we have a last-minute, half-hearted attempt here. This was not a reasonable — under Wiggins and under Strickland, this was not a reasonable penalty phase presentation. What you're saying is if they had started earlier and investigated more, they could have possibly come up with something that would explain why this young man, 19-year-old, with no criminal conviction, all of a sudden becomes an armed robber and a cop shooter. Absolutely, Your Honor, absolutely. And this — I think we've shown this quite clearly. The — well, moving on to the extraordinary circumstances here, the fourth one is that Haynes' state habeas attorney was functionally absent. He failed to bring any extra record claims. He was acting not as a state habeas attorney, but more as an appellate attorney. In contravention of the clearer Texas statutory authority, which is 11-071, Section 3, duties to bring only record — extra record claims in state habeas. State habeas petition consisted of previously rejected boilerplate claims with no extra record evidence whatsoever. And the fifth extraordinary circumstance here is that the state's aggravating evidence was very weak. It focused on two things. It focused on robberies that occurred on the same night as the offense, immediately preceding the shooting. And Haynes had no criminal record prior to this. This could have been presented through expert testimony as isolated behavior, not ingrained behavior, and therefore not relevant to the future dangerousness special issue. And the sixth extraordinary circumstance here is the extraordinary depth of Mr. Haynes' mitigating evidence. We have 39 uncalled and, for the most part, uninvestigated witnesses and three experts who could have shown the jury an entirely different picture from what they heard. Now, if we look at these affidavits and declarations, we see that these people were not even talked to by the defense counsel at trial. This could not be strategy not to call them, because they were not talked to. The defense — Well, some were talked to. One or two — one or — yes, Your Honor. One or two were talked to, but — None of them were talked to. No, I didn't mean to say all. I meant almost all. But I think of the 39, three perhaps were talked to. But they were — these were also people that said they were given the brush off when they were talked to. They were not called. And this — except for perhaps those three, we cannot say that this is a strategic reason not to call these people. The person after person describes Mr. Haynes' good attitude, respectful behavior, orientation towards a naval career, and the extremely low likelihood of him committing future violent acts. Remember that this is a young man who is in a BOOST program, which is a program designed to paint a path here towards acceptance at the Naval Academy and a naval career. Within a few weeks, that all falls apart. When he goes — when he's dropped from the program, he returns to Houston, gets involved with more seriously delinquent youths, gets involved in crystal meth, and under the influence of crystal meth commits his crime. Now, the seventh extraordinary circumstance we have here is that the expert witnesses — and I touched on this before — expert witnesses could have shown the jury the mitigating side of Haynes' psychiatric conditions, as they were all treatable. And if they're treatable, that means that they're not aggravating for purposes of the future dangers of this special issue. We have attention deficit disorder. We have major mood disorder. We have meth intoxication at the time of the crime. We have adolescent psychological disorders. We have developmental immaturity, conduct disorder. We have a significant history of familial psychiatric dysfunction. All of these could not be presented to the jury without expert testimony, and that was  Haynes' declarations and affidavits, however, were never mentioned by a district court in the three times this case has been before it. These declarations — the declarants and these 39 and the three experts — well, the 39 — say that mostly, except for two or three, that they were not even interviewed by the defense counsel. So their absence at trial could not, as I said, could not have been strategy. And the eighth extraordinary circumstance is that Haynes has never received a hearing on his claim of ineffective citizen counsel in state or federal court. And ninth, the overwhelming showing of prejudice, which is shown to be lacking in some of the other cases this Court has considered on remand. JUSTICE SCALIA. Counsel, it seems to me an awful lot of your categories, lists here for extraordinary circumstances, the first step and 60 v. 6, are really merits-based. You're saying you have very strong merits on your side. What's your best case to say that extraordinary circumstances is the entry for allowing this to be considered includes these sorts of considerations? GENERAL VERRILLI. Well, the Supreme Court itself and Gonzales has said that 60 v. 6 is based on extraordinary circumstances. JUSTICE SCALIA. Absolutely. But I'm talking about examples in other case law. I mean, you've taken the word extraordinary, and you seem to be using it to mean unusual, rare, stronger case than most. Is there any case that says that's where those sorts of matters are considered? Gonzales also says that extraordinary circumstances rarely will exist in the habeas context. Of course, that was Scalia, which may not be the strongest advocate at the Court in the past on this side of the issue, but he did write what seemed to be a fairly clear opinion. So is there any case law from that Court or from us that says what you're talking about are analogous to sorts of things that have been recognized as the right things to be looking at as extraordinary circumstance? GENERAL VERRILLI. Yes. Yes, Judge Southwick, there is. And I would point to the Buck v. Davis, the Supreme Court case, which is one of them. JUSTICE SCALIA. Well, we know what that says, and it does seem to me he would — what the Court said there is that this is such an unusual departure from what is required in our review that we're even going to decide the merits up here instead of remanding it. This is not that kind of extraordinarily errant decision by the trial court.  Your Honor, I think — JUSTICE SCALIA. I may not want to agree with that last thing, but it's a different category of extraordinarily errant decision. GENERAL VERRILLI. I agree, Your Honor. It is a different category. However, Buck is not meant, I think, as with any Supreme Court decision, is not meant to just apply to Mr. Buck. What we have here is the relevance of Buck here is that in addition to the COA standard, which Buck got into, which is not relevant here because we do have a COA, the relevance of Buck here is that a district court abuses its discretion under 60b-6 when it, quote, "...fails even to mention the evidence in concluding that Buck's ineffective assistance of claim, counsel claim, was unremarkable." The same thing happened here with Mr. Haynes's ignored evidence. As with the district court in Buck, the district court here failed to mention any of his 39 affidavits or his three expert declarations, his arguments for prejudice, his lack of prior police contacts, and his analysis distinguishing his case from the other cases cited, or the fact that the State's aggravating evidence was very weak here, and it was based on several robberies that occurred on the same night, and it was based on some verbal altercations in the high school ROTC program that were never even amounted to that. So I think that I would point to that as probably the main. This is a case, a 60b-6 case where relief was granted, and it had only one factor here, which is the ignorance of the racial prejudice issue. We have many issues here. Unlike Mr. Buck, we have many issues here that I think weigh heavily on the side of equitable relief under 60b-6. Did you say this case is similar to Rompillo in the Supreme Court? Or is that — am I wrong about that? Well, it is relevant. There's also a Third Circuit case, Cox v. Horn, that I cited in my 28J letter, Your Honor, and that's — I think that's also very relevant. So I would refer you to the court. I daresay we've never had a case exactly like this. I think that's a fair judgment. Somebody with a clear record, 19 years old, and there's no explanation for why. Absolutely, Your Honor. And we're not likely to have another one because it's four years now since Martinez has come down. These cases — if any new case were to come up now, it would fail on the diligence prong. So this is not likely to — it hasn't come up, and nor is it likely to come up in the future because we're so far removed from — in time from Martinez and Trevino. It could not succeed because it would be — it would not be diligent. Counsel, I know you have a lot to cover. Your brief has been very thorough, as has your opponent's brief. I wish you would discuss whether this is a successive petition under Gonzales, whether we should consider this to be seeking a second review of a decision that was already made by the district judge back in 08 and restated more recently on the merits. No, Judge Sussman. We would argue it's not. We have argued it's not a successor. First of all, Gonzales was an AEDPA case. AEDPA does not apply here because there's been no adjudication on the merits in the state court. Secondly, Gonzales — this cannot be considered a — this claim was brought in the first initial federal petition, and there's no problem here about successor — you know, second successor petitions in federal court because this claim was brought entirely in the first federal petition. So I think what Gonzales says is basically that, you know, under AEDPA, under the AEDPA standards here, we don't want to allow people to slip through under 60b-6 to present successive petitions, to present 60b-6 cases that are in reality successive petitions. And that's, I think, the holding of Gonzales. And that doesn't apply here because, as I said, AEDPA doesn't apply here, first of all, and Gonzales was an AEDPA case. So I would like to — JUSTICE SCALIA. That's not quite enough for me. I wish you would stay with this just a bit. It seems to me that what Judge Lake did back in 07 was to say, here are all the reasons pre-Martinez-Trevino why these have — have not been properly presented yet, they've not been exhausted. But even if that's not relevant or that somehow can be gotten around, here is my of why on the merits there was not an effective assistance of counsel. So are you saying under AEDPA, regardless of how exhaustive a review, it would be an improper review? Are you just — are you saying something different, that it was at the wrong time, it wasn't properly presented at that time, whatever? Or are you saying because of the way Judge Lake did it and what he wrote in that opinion, it's not a sufficient merits-based? Well, we're saying there's actually been no merits case. And, again, this is not an AEDPA case. But we're saying that because of the way Judge Lake did this, and I'll give — I'll give props — You mean by it's not an AEDPA case because it's a 60B6 case? It's — it's not AEDPA because AEDPA only applies to cases that have been reviewed on the merits in the State court. And this has never had a State court renewal. And I — I hope I corrected that in my 28J letter. There was some reference to AEDPA. This is not an AEDPA case, though, because it's never been reviewed on the merits in the State court. So — but I — getting back to Judge Southwick's question, I think that the answer to that here is primarily because Judge Lake held, quote, without addressing the individual basis for each unexhausted factually dependent claim, the Court notes that none of his arguments facially command relief. And that was the identical holding three times the case was before him and the three times that the Court had the opportunity to review the claims. The District Court admitted the claims were factually dependent, but never dealt with the facts. So this — So what are you saying that Judge Lake was saying? I interpret that to mean, at least a reasonable way to interpret it, is by not addressing is the word he used, it means I'm not going to elaborate this, articulate this in my order, but the rest of what's in his order seems to me perfectly supports that he looked at all of this. He's just not going to articulate it in his order and reach the conclusion that only makes sense if, in fact, he had looked at the records. Are you reading it differently than what I just said? Yes, Your Honor, I am. And we are — our argument is that this is an abuse of discretion, because we're not saying that he has to have some quantum of analysis or anything like that. But we're doing — we do say that because Judge Lake said that Haynes's claims involve unresolved factual issues, that he has to — that there has to be some attempt to deal with these issues. There's been no merits review here when there's no attempt to deal with the facts or resolve the issues. And we're saying that this is a clear abuse of discretion, for instance, under Buck v. Davis, which says — and this Court has already held this in Ray Edwards this year, which I cite in my 28J letter — Buck holds it can be an abuse of discretion under 60b-6 to minimize or ignore the main evidence in not finding extraordinary circumstances, which is exactly what happened here. In Buck, the — the Court ignored or minimized the evidence of racial discrimination. And that's exactly what happened here. In Edwards, this Court has held in the context of 60b motions that, quote, a district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence. End quote. And that's exactly the case here. The district courts — Judge Lake repeated three times the holding that the trial court went to great lengths to ensure that Haynes's constitutional rights were protected and yet ignored the fact that this is the case where the record shows that the judge is on the bench during Vore Dyer cleaning two pistols in full view of the prospective jurors. This is hardly assiduously guarding his constitutional rights. The district court also held that their omission — omission of this evidence merely demonstrates the exercise of strategy, which is, as we've already discussed, wrong, because the trial attorneys could not have known what these declarants would have said. The 39 plus the three experts were not going to know what they said without talking to them, so it couldn't be strategy. So this clearly indicates that Haynes's evidence was just ignored. We have here — I would like to — unless the Court has any further questions, there's a third basis for the district court's holding, which is prejudice. And we would like to point out that the district court held — the district court totally ignored Haynes's showing of 13 instances of prejudice in 11 pages of briefing. It erroneously held that even though Trevino opened the door for Haynes to argue that a State habeas representation could provide cause, Haynes's briefing only superficially addresses the question of actual prejudice, giving a site to one page of Haynes's brief that was basically irrelevant to the showing of prejudice. Here again, none of the 13 reasons why trials counsel failed to present the mitigating evidence of prejudice to Haynes were even discussed, nor were they even identified, and they occupied over 10 pages of the 60B petition. He showed a multitude of prejudice, and this was one reason why some of these other post-Martinez-Trevino cases have failed, the lack of showing of prejudice. We've shown that so little mitigation was presented that the prosecution argued that there was no mitigation. We have prejudice, failure to present Haynes's psychotic disorders, his auditory hallucinations, his attention deficit hyperactivity disorder, major mood disorder, family and familial dysfunction, moods out of state. We have longstanding mental disorders, unstable and chaotic environments. The Westlake Psychiatric Hospital commitment, the records were not introduced by the defense, but by the State and used in a prejudicial manner. Mr. Ellis, it's up to our presider. I'm much free to go over your time. Let me just ask one question that is a factual question. Well, yeah, factual, you can answer it in whatever way you think is the right way. Would you say back in 2008, which is when the Fifth Circuit ruled, so after Judge Lake's 2007 opinion, whenever you wrote the COA request, did you request that his alternative merits decision be reviewed by the Fifth Circuit? Yes. That went up here. Judge Dennis was on that panel. Right. But was there a separate request, not just for his procedural rulings, but to review his alternative merits decision? Yes. I believe the ---- Okay. That's all I need. Thank you. Mrs. Vendel? Vendel, yes. Vendel. May it please the Court. This case presents a narrow question. Do Martinez and Trevino constitute extraordinary circumstances under 60B6? Given this Court's precedent in Adams and Diaz, the answer to that question is abundantly clear. A change in decisional law, even one that could benefit a petitioner, is hardly extraordinary. And here, Haynes relies on truly nothing more than a run-of-the-mill IATC claim to distinguish his case. However, the district court has already determined that that IATC claim is without merit. And that determination ---- Let me ask you about something that he just said. He said that this has never been exhausted. What is the effect? Which I guess is true. You can tell me if that's not true. Never been exhausted in the state court a merits claim on the ineffective assistance. First, is that true? Secondly, what does that do to the decision by Judge Lake back in 07 and then that there is no merit? Did he have authority? Or is this something where abuse of the writ rules under Texas, he would have to go back into Texas court? I mean, was that a ---- So what ---- You know, my ultimate question is, is that a valid decision procedurally if it's not an exhausted issue? To your first question, Your Honor, no, the claims are not exhausted. They were never presented to state court. So the bulk of his IATC claim, which consists of the 24 subparts, were not presented to state court. So they were unexhausted when they were presented to the district court. But you have ruled on them. Well, the district court first applied the procedural bar as was appropriate under the time in Coleman. And he only did under DeNovo review, essentially, as an alternative matter. Right, but if we agree on the procedural point, then those issues were not in front of him. They were not exhausted. So what is the effect of a ruling by a federal court on an unexhausted issue? Well, Your Honor, under the exhaustion doctrine, a district court may deny an unexhausted claim but may not grant relief on it. So he was properly able to decide that there was no merit to the claim, and he noted as an alternative matter. Is that under 2244 or 54 or something? It's under the statute. I don't remember exactly which provision at this time, but I think it's 22B1, I believe, 2244B1. You're not taking an exam, exactly. You are in a way, but keep going. And because the district court did properly reach the merits of the claim in the alternative, that determination is fatal to his argument in every respect. He cannot establish extraordinary circumstances. He cannot show a substantial claim under Martinez. He cannot show that State habeas counsel was ineffective, and he cannot show that there was actual prejudice. But turning to, in particular, the first issue of extraordinary circumstances, the Supreme Court has made absolutely clear that extraordinary circumstances will rarely occur in the habeas context. Indeed, that is precisely why not every interpretation of Federal law or in change in decisional law setting forth requirements for habeas provides cause for reopening a judgment. Importantly, this Court has addressed the question of whether Martinez and Trevino are extraordinary circumstances head on. In Adams, issued after the Martinez issue decision, it found that it was not a jurisprudential sea change sufficient to constitute extraordinary circumstances. And in Diaz, which was issued after Trevino, which did nothing more than apply Martinez to Texas cases, this Court found that that did nothing to change the reasoning in Adams, and therefore, neither Martinez nor Trevino were extraordinary circumstances. Adams said jurisprudential change in law alone cannot be enough, right? Correct, Your Honor. And in Diaz, it reiterated that principle, and even though it was presented with confidence that Martinez and Trevino did not constitute extraordinary circumstances. Therefore, Haynes' argument that Martinez and Trevino somehow opened the door to the extraordinary circumstances question is foreclosed by this Court. Give me a case in which an extraordinary circumstance has been recognized. What are we looking for, example-wise, of extraordinary? Your Honor, I would point to the Supreme Court's decision in Buck. In Buck, there were — Got something else? I mean, Buck has been talked about already. Is it — I mean, that's an extraordinary departure. I forget what the modifier was. Disturbing departure from the norm. We don't have that. There's more to it than that. What else do we have besides disturbing the mental calm of the Supreme Court? Well, I think we can look to the other provisions of 60B to get some instruction on that. And those are simply — other examples I could think of would be perhaps fraud on the Court. Things where something happens — Gonzales mentions that. Scalia and Gonzales mentioned fraud on the Court being extraordinary. Correct. Correct, Your Honor. Something that essentially is outside of the proceedings. 60B is looking at something that happened after final judgment has been rendered. Haynes's arguments of the nine extraordinary circumstances that he offered, six of those had nothing to do but with the merits in the claim. And that was all prior to the proceedings. There's nothing new here, aside from Martinez and Trevino, which are not themselves extraordinary. We would look to things that are after final judgment has been rendered, sufficient to warrant reopening the judgment, such as, as I mentioned, fraud on the Court, or, for example, actual innocence evidence, which could come up in a later circumstance. In Buck, I think it's also instructive to note that it was not merely the merits of the claim. It's not merely the nature of the claim, which was indeed unique and, as Your Honor said earlier, a disturbing departure. It was also the third fact, aside from it being a capital case, it was the third in six other cases of similarly situated defendants to Buck, but not in Bucks. Have you ever seen a case like this before, where you have a 19-year-old who had not a product of a ghetto, doesn't have any crime in his background, and all of a sudden commits armed robberies and shoots a policeman on the same night? Looks to me like this is kind of a—this is not like the cases we usually get. Well, Your Honor, I have not personally seen that. However, I would say that that is precisely why trial counsel's strategy to focus on those unusual circumstances, as Judge Clement pointed out earlier, to show that he was a good, intelligent kid who had a good childhood. Where in the record did you find where the defense counsel made that deliberate, considered decision? As I understand the record, which I haven't read, but with my law clerk's help, I have read parts of it. My understanding is that there just wasn't any investigation until the voir dire started, and they just barely found out about his possible drug use and his possible emotional and mental underlying problems, and maybe his strife between the mother and father, who were never married and didn't live together. It seemed to me that this is an unusual case. Well, Your Honor—I'm sorry. We would disagree that there was no investigation done in this case. There's evidence in the record that he did hire an investigator. There's also evidence in the record that he did speak with two psychiatric experts. He was well aware of a lot of the problems that Hanes now wishes he had focused on. But those experts didn't examine him, did they? I don't think he had—defense had experts who examined him. Your Honor, I don't know the answer to whether they examined him or not. However, I'm happy to look at this a little bit further. But they did review all of the records, which he now uses as the basis for much of the evidence that he wishes had been proffered. We know, for example, they looked explicitly at the West Oak psychiatric admission records, which focused primarily on his mental health. In fact, the state proffered that evidence and used it to his advantage. We also know that the mental health evidence, certain evidence of corporal punishment and family dysfunction and parental conflict and his ADHD— Well, Your Honor, would you find in the record and tell me where the defense counsel— about these problems of drugs and mental and emotional illness and family discord and made a considered decision not to investigate further? Well, Your Honor, we— My impression, that didn't happen. He just—they just didn't—they didn't have time to begin with because they didn't start even looking at this penalty phase until it was underway. Well, Your Honor— That's just a question I'd like for both counsel to enlighten me if there is a place in the record where they have evidence that the defense counsel said, I could have gone to the West—what was it—Westport or whatever facility he was placed in at one time. I could have gone there, but I had a good reason not to go into that. Well, Your Honor, again, I would disagree that he did not make a reasoned trial strategy here. As indicated by the two letters in which were written to defense counsel, this is actually provided by Haynes himself. They are located in ROA 904 through 907. In there, they specifically mention much of the mental health history and issues that had come up with Haynes. But in addition, we know that because— Before you move on, what will we find on those four pages? Those are the two letters from the two psychiatric experts the trial counsel hired, and there are—those are the reports in which they say what they found with regard to Haynes. But those would have been received by trial counsel, or were they developed—trial counsel before the trial or before mitigation anyway, or were they something generated during Habeas? They are addressed to trial counsel, and their dates are in 1999, so they were given to trial counsel before the mitigation phase of punishment. Remind me, what was actually introduced on his mental health by the defense at sentencing? Yes, Your Honor, and this also leads to Judge Dennis' question. In the record, we have evidence from, in particular, Haynes' father, who talked about incidents and mentioned repeatedly that he had been submitted for psychiatric help. He mentions incidents of Haynes approaching him with having bad thoughts. He talks about, in specific, ADHD. You'll find that testimony at 29RR50-101, and I know that's a long page range because he goes into great detail about this. Which RR? That's part of the page. The reporter's record, I'm sorry. 1501? 29 volume—29 of the reporter record, 50-101. Thank you. And that is Haynes' father himself testifying to Haynes' mental health problems. Was there any evidence introduced by the defense at sentencing from a medical professional, records, testimony, affidavit? No, Your Honor. They did not proffer any experts. However, he did cross-examine some of the State's experts which had come in or the State's custodian of records who came in to offer the mental health records themselves. That may not be constitutionally deficient, an issue that we might have to get to, might not, but that's a weakness in the case, would you not say? Your case as well as in the Merritt's case back 18 years ago? Not to have some professional medical testimony or evidence? Well, Your Honor, I think simply given that he did hire those two experts and he received those letters, we have a clear indication that he simply chose a different trial strategy. He chose the reasonable trial strategy of focusing on a history that had no criminal history, no arrests, no convictions. One of the things Judge Dennis was asking, you used the word chose, what do we know to support that he chose that strategy which would require him to know of at least two options to choose between? We don't have anything from State Habeas Counsel specifically because this was not raised in state court. Normally we would have an affidavit to have him explain that, but given what we know from how he presented and what he chose to present at trial and given that some of this evidence that he wishes he had focused on did come out and you can get an indication from the record that trial counsel in fact wanted to minimize that. He wanted to minimize some of the drug abuse. He wanted to minimize some of the physical, some of the psychological problems because what he wanted to do was to show a good kid who simply made a bad mistake, and that was the trial strategy that he chose. And Haynes merely disagrees with that trial strategy. Where was this tried? What county? Harris County, Your Honor. Thank you. Well, he disagrees with it now, but he didn't disagree with it for a number of other proceedings, right? Correct, Your Honor. He now disagrees with it and asks this Court to engage essentially knowing that it was unsuccessful and to essentially find that it was unreasonable, but that's not the test under Strickland. Under Strickland, we can't engage in this type of impermissible second-guessing, particularly when, as Your Honor has pointed out, he did have a defendant who had an unusual background that was a good kid and did not have anything in his background to indicate that he was going to be a future danger, which is what trial counsel's strategy was. What do you say the relevance of Judge Lake's alternative merits decision is in what we're looking at today? There are two answers to that question, Your Honor. First of all, I would say that it's important, the mere fact of the determination is important because even if extraordinary circumstances existed, even if Martinez intraveneo applied, which they do not, he's already received the relief that he seeks. I mean, if they applied. If he could demonstrate that Martinez intraveneo applied to his case. Okay. Were this to be reopened, which he cannot. He cannot show that Martinez — he cannot show cause to overcome the procedural bar. But if he could, he would only receive — the only entitlement, the only relief he seeks is a merits determination. It's not entitlement to relief. It's simply asking the district court to give him what he has already given him. So that's the first significance of the district court's denial. The second one is the fact that he has properly found that the claim is without merit is precisely why he would not overcome Martinez intraveneo. There are no extraordinary circumstances here, but if there were, and this case were to be reopened, and Martinez intraveneo were to apply to the case, he would not be able to demonstrate a substantial IATC claim because the claim lacks merit. And because the claim lacks merit, he also could not demonstrate that State Habeas Council was ineffective. And as — These — you're talking about Judge Lake or yourself or who? Who can be so far-seeing that these uninvestigated claims would not prove to be more — more meritorious than you think? Well, Judge Lake, Your Honor, he did review them, and he has reviewed them, and he's already determined that they aren't meritorious. He has looked at them. And contrary to Haynes's arguments, if he's — He didn't really explain it very much in his opinion. He just said, I looked at it, and I don't think it has any merit. That's true, Your Honor. It was a short opinion, but it was an accurate one. He is arguing nothing more than mere disagreement with counsel. Moreover, however, ignored in this is the district court's first denial of 60B. In that denial, he actually does spend approximately four pages discussing the merits of the claim. In it, he talks about what the State's aggravating evidence was. About the 2012 decision? Yes, Your Honor, the 2012 decision. The cite for that would be at ROA 2197 through 2200. And in there, he specifically discusses the aggravating evidence that the State had provided. He cites the CACA's recitation of that evidence in addition to citing other evidence that he noticed from the record. He discusses defense counsel's strategy and his investigation, and he finds that against that background, the Court considered the evidence and summarily denied Haynes's claim that trial counsel provided deficient performance and the preparation and presentation of evidence in the punishment phase. So there, we have an indication that he did consider this claim. Let me ask, what is the opportunity and, depending on that answer, what is the importance of an opportunity of appellate review of that decision, first made in 07, renewed, expanded, maybe not expanded in 2012? Is it important that the Fifth Circuit or that the next level court would have had a chance to review that in the analysis? I mean, as I read Gonzales v. Crosby, what Scalia says is that this must, if it's an issue that's been presented previously in a 2254, you can't relitigate it. Has it been presented in the way that Gonzales or later cases mean? If you haven't had effective opportunity for judicial review, and was there an effective opportunity for review in this case? Well, Your Honor, to the second question, yes, there was an effective review, judicial review. In 07, 08? In 07, yes. That's when the district court initially reviewed his Federal habeas petition and applied the procedural. Let me ask you this, because this is something I've been struggling with. I don't think there's case law on it. I want your reasoned analysis of it. I know which side you're going to come out on. You need to represent your client, but help me with it. It seems to me this was an alternative, and there was a failure to exhaust procedural ruling first. Both are independent rulings and can independently support the claim. Don't give me all that. I know about that. But there was no way for the Fifth Circuit to get to the merits ruling once it decided no COA on the ineffective assistance of counsel. Procedural ruling was necessary, and as I read my colleague's opinion in 2008, he lists them, and one of the COAs is for the procedural ruling on the ineffective assistance. It doesn't seem to me there was much of an opportunity for us to do an alternative ruling, reason for it or opportunity. Doesn't it have some impact of whether there's been a full review of what Sim Lake did? No, Your Honor. I don't think — I mean, I would first state that you — to Your Honor's question earlier to my opposing counsel, he did seek, as he conceded, that he sought both the procedural ruling and the alternative merits. He said that. I may have caught him cold. I may not have. I don't know if that's in his COA, and I don't know how it cuts, if it is or if it isn't. But let's move beyond that. Okay. So he says he did. Yes. It was in his COA application. And this Court found that they — there was no reason to dispute the district court's assessment of Haynes's claim. And it also denied the COA as to all issues, although it in all — In our opinion — I don't see in our opinion if there's any discussion, any reference to the merits decision, which I'm not saying that's controlling, but I'm just saying as a matter of fact, I didn't see it. I missed many things. Are you saying it's in there, or it doesn't matter if it's in there? Well, Your Honor, I think, first of all, you're correct that this Court only specifically addressed the procedural ruling in the context of the opinion. However, I think those two statements could be fairly read to be some sort of implicit denial of the merits of the claim. However, notwithstanding that, it's irrelevant to the current inquiry. Here we have the district court who did give the alternative merits. And Haynes only tries to say, not that a merits review didn't happen, simply that he disagrees with it. And that cannot be an extraordinary circumstance. It cannot be the inquiry which this Court engages on in a 60B, given that the only other thing he has here is Martinez and Trevino, which is itself not extraordinary. If we were to take a run-of-the-mill IATC claim, which his is, then every Petitioner essentially could simply disagree with any merits determination made by the district court in the alternative and force this Court to reengage in a merits analysis continuously. That cannot be the analysis which we use at the 60B stage of the proceedings. One of the things he says is extraordinary, and it may have been four at one stage and it's grown. Now, I'm not quibbling with you, Mr. Ellis. I'm just trying to remember the briefing. But all, you know, strong statements have been made here. It seems to me his argument is that generally, and we've held it already for Trevino and Martinez, that a change in the law will not allow, that's not constitutionally based and ruled to be retroactive, is not going to benefit a prisoner who had a decision made under the prior law. But he's saying what's extraordinary here and why we ought to go beyond that is that he's been running with this from the very beginning. He recognized it before the courts accepted it and the issue had been around. Doesn't that add something to the mix on his side, on this being an unusual, even if you're not willing to label it extraordinary? Well, Your Honor, the Petitioner and Diaz made the same argument. And, in fact, this Court did find that he was diligent in presenting his argument. The Martinez-Trevino is a Diaz fax, too? I'm sorry? He was making that argument before Martinez and Trevino also, in Diaz? Yes, correct. He had been making the argument before Martinez and Trevino were issued, and then when Martinez and Trevino were issued, he had raised a 6dB, raising essentially the same claims that he's raising now. And this Court specifically addressed the diligence and found that he had, and then still found that there were no equities in the case sufficient to constitute extraordinary circumstances. I would also note that it reached the equities of his case, assuming arguendo that they even apply. This Court has not held or reached the question of whether the 7Ls factors do have application of 6dB. But in Diaz, they assumed that it did, and then they found simply that there were none weighing in his favor. It does seem awfully inappropriate to use factors called 7Ls in a capital case. But maybe they apply. Maybe they don't. We need a new name for them if we use them. But, Your Honor, again, he is alleging nothing more than a run-of-mill garden variety IATC claim. His claim is a failure to investigate under Wiggins, which is essentially the same claim that every capital habeas petitioner always brings forth. And if that were to be an extraordinary circumstance, I would reiterate that it would be — there would be essentially no end here. It cannot be extraordinary. This is unlike Buck, which dealt with a unique and extraordinary nature of the claim. It was not merely that it was an IATC claim. It was not merely even that it was a meritorious IATC claim. It was the nature of the claim and the treatment that it had received outside of the proceedings. Here, Haynes has alleged nothing more than a disagreement with the merits of the claim and Martinez-Entrevino. And as this Court has established that there are no extraordinary circumstances where Martinez-Entrevino are concerned, all we are left with is a disagreement with the merits of the claim. Let me ask you the right way from your viewpoint to decide this. If this fails under Gonzales-Crosby as a successor petition, equivalent of a successor petition, jurisdictional issue not even been presented so we can't consider it, do we have to decide that? Or can we start and end from your viewpoint, not saying that's where I'm coming out, could we start and end with saying that it fails because of Martinez- Entrevino and the other cases we've said and there's been no extraordinary circumstances? I believe we can start and end with saying that Martinez-Entrevino and this Court's precedent find that there are no extraordinary circumstances. Let me skip a jurisdictional issue is what I'm asking. I mean, I'm sure you caught that. If you'd respond directly to that, though. Well, Your Honor, Gonzales makes clear that if he is challenging a determination by the district court which precluded merits relief, then 60B is proper and it's not a successive petition. Here he is challenging the district court's procedural bar. So arguably it is proper. However, given the approach that he has taken to challenge extraordinary circumstances, I think there is an argument there to be made that he is, in effect, trying to end run around a successive petition statute. He is merely just disagreeing with the merits of the claim. But the claim is properly bought as a 60B. Therefore, I believe the Court has jurisdiction on it. Thanks for your analysis. If the Court has no further questions, because Haynes has failed to demonstrate any extraordinary circumstances, I respectfully ask this Court to affirm the district court's denial of 60B, 6, relief. Thank you. If I could ask you for Judge Dittus, my understanding of what Judge Dittus asked, what is it we want from her at some point, some reference to? Oh, one thing was where does the record show that the trial counsel made a considered decision not to investigate further? And was he warranted in making that? What did he base that decision on? You want her to do that as a 28J? Well, just a letter, I guess a letter brief. I could answer that now. Well, go ahead if you're ready. Okay. I just wanted to clarify a couple points in the record that I had pointed out earlier, and one of those was the two letters that were sent to trial counsel, and that was, again, at ROA 904 through 907. And those were the psychiatric expert reports that were sent to trial counsel. And then the other pieces of evidence would be through the trial testimony, through the witnesses that were proffered, and where you can see that evidence was brought out about some of the mental health stuff and minimized, and that would be the volume 29 of the reporter's record, 50 through 101. And also some of the drug information comes out at volume 29 of the reporter's record, 65 through 74. What was that first, that one before that? What volume was it? Both are volume 29. 29 of the reporter's record. Yes. And the page ranges are 65 through 74 and 50 to 101. Okay. Thank you. Thank you, Your Honor. I would like to respond briefly to some of the arguments that counsel made. First of all, I think we've already discussed this, but this is certainly not a run-of-the-mill Strickland case or Wiggins Clay case. I don't think that these equities have been before this Court before. And as I said, it's unlikely under the Martinez-Trevino rubric that they will reoccur because the diligence could not be shown. Secondly, counsel has referred to Adams and Diaz as controlling. I think this has been probably covered. Adams and Diaz. Adams refers to where the only extraordinary circumstance is the Martinez-Trevino exception, and that's not the case here. I would like to respond to counsel's invocation of strategy here, which is dramatically belied by the record. I would refer the Court, the counsel has referred the Court to the letters that were received by trial counsel from the experts that they have. I would refer the Court to Dr. Cunningham, Dr. Rosen, and Dr. Silverman's affidavits. I don't have the exact ROA sites here, but they cover this extensively and in detail. One of them was a one-page report that was received either on the eve of trial or after the jury had already been chosen or during the voir dire. This did not leave time for any coherent investigation. Not only that, though, that the findings of those letters are dramatically exposed as hasty and unfounded in the declarations that we've submitted. Dr. Rosen and Dr. Silverman's, especially Dr. Cunningham's, goes into this too. The state's case at punishment had to do with the West, Oaks Hospital records and the defense. Because they were not prepared, they had no way to deal with them as mitigating. Dr. Cunningham, Dr. Rosen, and Dr. Silverman can show this. They could have shown that this, Mr. Haynes's background would have shown that he's not a future danger, that the robberies, the other leg of the stool on which the state's case rests, the robberies were an aberration. The experts could have described the drug use in a mitigating manner, not as an aggravating manner. They could have described his actions as impulsive, not habitual, or ingrained, which would go directly to the future dangerousness special issue. Same thing with the ROTC evidence, which occupied no less than about 90 pages of the state's case on punishment. It amounted to a shouting match, and this was the worst that they could present against Mr. Haynes on punishment. Two incidences which amounted to a shouting match. The affidavits we've presented here could have shown Mr. Haynes as respectful, good character, and the experts could have shown that these outbursts in high school were a result of a chemical imbalance that could have been treated and was therefore not all that relevant for future dangerousness If the condition could have been treated, then it wouldn't be an ongoing worry if he were to be given a life sentence. There were diagnoses of ADHD and bipolar, both of which could have been shown to be mitigating in the sense that Mr. Haynes had less volitional control over his actions, his impulsive actions, on the one night when these robberies and the murder occurred. We have Roy Smithy here who testified for the state about prison conditions. Here again, Dr. Cunningham's affidavit shows that it misrepresented prison conditions and it misrepresented the state's burden. Roy Smithy was allowed to say that the only safe way to deal with Mr. Haynes is to kill him, to have him executed. And without any expert testimony here to show that Mr. Smithy vastly exaggerated the incidence of violence in prison, the jury was left with nothing to consider on that testimony. And it could have been shown that prison violence, and this is Dr. Cunningham's affidavit, prison violence is very rare and it doesn't really occur as much as people think it does. As far as the counsel referred to the district court's merits review here, we've gone into merits review. We assert that there has been no real merits review when the district court just says, without addressing the individual bases of each unexhausted factually dependent claim, the court notes that none of his arguments facially command relief. All of these claims are factually dependent, and they're all factually. Without going into the individual facts here, there's been no real merits review. And my time is up, but thank you very much, Your Honor. Thank you.